IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


UNITED STATES OF AMERICA   )
                              )    CRIMINAL ACTION NO.
    v.                    )     2:18cr419-MHT
                              )       (WO)
MICHAEL BRANDON SMIRNOFF   )


## OPINION AND ORDER

A single indictment charges defendant Michael Brandon Smirnoff with using unreasonable force, in violation of 18 U.S.C. § 242, during two separate arrests that he carried out in 2016 and 2015 as a city police officer. Count One alleges a March 2016 incident, and Count Two a July 2015 incident. Smirnoff moved to sever the two counts, arguing that he would be substantially prejudiced by a joint trial on both. His sole asserted ground for severance is that he "must" testify as to Count Two, but "must not" as to Count One. Motion to Sever (doc. no. 20) at 3.[1] Because the court is not

---

1. The indictment also charges Smirnoff with a third count, for falsifying a police report for the July 2015

convinced that a severance is warranted, his motion will be denied.

## I. *Background*

Count One alleges that, in March 2016, as an officer with the Police Department for the City of Tallassee, Alabama, Smirnoff used unreasonable force while arresting a person identified as J.M., in violation of his Fourth Amendment rights. Specifically, it states that, while J.M. was handcuffed and without legal justification, Smirnoff slammed him to the ground and used unreasonable force while placing him into a police vehicle, resulting

---

arrest, in violation of 18 U.S.C. § 1519. Nevertheless, this opinion focuses exclusively on the first two counts, because they are the focus of the severance dispute. Furthermore, Smirnoff moves to sever only Count One from Counts Two and Three; he does not seek to sever Count Three from any other count. So, concluding that a severance is not warranted between Count One and Two completely resolves his motion, given that he has not sought to sever Count Two from Three. Finally, even if he had sought to sever Count Two from Three, the court would deny the motion because of the significant overlap in evidence to prove both counts.

2

in bodily injury to J.M. *See* Indictment (doc. no. 1) at 1-2. Smirnoff counters that, on the day of the incident, J.M. was illegally operating an all-terrain vehicle on city streets in Tallassee. *See* Motion to Sever (doc. no. 20) at 3. Another officer tried to stop J.M., but he refused, leading to an extended chase that culminated with his apprehension in a grassy field. A body camera captured J.M.'s arrest. The footage shows "Smirnoff placing his foot on the back of J.M.'s head. Two other officers are on top of J.M.'s torso and place J.M. in handcuffs." *Id.* at 4. J.M. is then "lifted off the ground by ... Smirnoff and another officer. The body camera footage appears to show J.M. being lifted and then falling down to the ground. The two officers once again attempt to stand up J.M., and once again he is elevated and falls to the ground." *Id.* J.M. is then "stood up, and he and two officers, one of whom is ... Smirnoff, begin walking towards the police vehicle. As the trio are approaching the vehicle, the footage appears to show J.M. making contact with the rear passenger door." *Id.*

Count Two alleges that, in the prior year, July 2015, Smirnoff used unreasonable force while arresting a person identified as M.S., also in violation of his Fourth Amendment rights. The indictment states that, without legal justification, Smirnoff tasered M.S. after he had been placed in handcuffs, resulting in bodily injury to M.S. *See* Indictment (doc. no. 1) at 2. Smirnoff counters that he and two other officers responded to a "disturbance" at the Huddle House in Tallassee. Motion to Sever (doc. no. 20) at 5. "Footage from ... Smirnoff's body camera clearly shows that when the officers arrived at the Huddle House, they stumbled into a chaotic situation." *Id.* Smirnoff says that he will testify that, initially, the other officers got into altercations--at least one of which was physical--with subjects at the scene, *see id.* at 8; that, as he assisted fellow officers, another officer handcuffed M.S. and placed him in front of one of the patrol vehicles; that, after a moment, Smirnoff approached M.S. and escorted him to his patrol vehicle; that, while escorting him, "M.S.

4

was yelling and being disruptive; and that, upon reaching the vehicle, M.S. resisted and attempted to pull away," *id.* At that point, Smirnoff will testify, he tased M.S.'s back for approximately five seconds. *See id.*

While Smirnoff's motion does not specify how much of the July 2015 incident is on video, the government alleges that the footage captured the "conduct charged" in Count Two. Government Response (doc. no. 24) at 7. The government further asserts that the "video of Count Two shows that, immediately after tasing M.S., [Smirnoff] taunted him by saying 'you see the language I f--king speak? There's your f--king rights.'" *Id.* at 6. Smirnoff admits that "[t]here is no question" that he tased M.S, and that afterwards he used "some colorful language." Motion to Sever (doc. no. 20) at 5, 8.

Smirnoff has moved to sever Count One (the alleged March 2016 slamming incident) from Count Two (the alleged July 2015 taser incident), and to try them separately.

## II. *Discussion*

### A. Joinder

Although Smirnoff does not raise the issue, the court first finds that joinder of the counts is proper under Federal Rule of Criminal Procedure 8(a). Rule 8(a) allows joinder when separate counts "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). The rule "is construed broadly in favor of initial joinder," and the offenses "need only be similar in category, *not in evidence*." *United States v. Hersh*, 297 F.3d 1233, 1241 (11th Cir. 2002). Here, Count One (the alleged March 2016 slamming incident) and Count Two (the alleged July 2015 taser incident) are sufficiently "similar," in that they both allege that Smirnoff used unreasonable force while arresting handcuffed people.[2]

_____

2. Joinder under Rule 8(a) is also proper as to Count Three because the alleged "coverup attempt[] bear[s] a logical relationship to the underlying" crime alleged in Count Two. *United States v. Danis*, 752 F.2d 963, 972 (5th Cir. 1985); *see also United States v. Weiss*, 491

## B. Severance

Even where joinder is proper under Rule 8(a), Rule 14 of the Federal Rules of Criminal Procedure permits severance if a single trial on all counts would be unduly prejudicial. The resolution of a Rule 14 motion is "left to the discretion of the trial judge." *United States v. Wolford*, 614 F.2d 516, 518 (5th Cir. 1980).[3] The trial court balances "the prejudice to the defendant against the interests of judicial economy." *United States v. Benz*, 740 F.2d 903, 911 (11th Cir. 1984). To prevail on a motion for severance, the prejudice must be "severe or compelling." *United States v. Liveoak*, 377 F.3d 859, 864 (8th Cir. 2004); *see also United States v. Cardwell*, 433 F.3d 378, 387 (4th Cir. 2005) (stating that severances

---

F.2d 460, 467 (2d Cir. 1974) (citing cases holding that "charges of attempted concealment or cover-up of a crime are sufficiently connected with the crime itself to permit joinder").

3. The Eleventh Circuit Court of Appeals has adopted as precedent all decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981. *See Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

"will be rare"; it is "not enough for the defendant to show that severance offers him a better chance of acquittal"); 1A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 222 (4th ed. 2018) ("[T]he mere possibility of prejudice is not enough for severance; courts have said that the risk must be 'compelling,' 'specific' and 'substantial.'").

Courts have recognized several types of prejudice that may result from joined counts, including that: "(1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be inadmissible in a separate trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither." *United States v. Scivola*, 766 F.2d 37, 41-42 (1st Cir. 1985) (internal citations omitted); *see also Davis v. Coyle*, 475 F.3d 761, 777 (6th

Cir. 2007) (recognizing that prejudice may also result from the jury using evidence of one charged crime to infer a general criminal disposition, or from cumulating evidence of various charged crimes).

Where, as here, the basis of the alleged prejudice is that the defendant wishes to testify as to one count but not another, he must satisfy three requirements. Namely, he "must show" (1) that the charges are "distinct in time, place, and evidence"; (2) that he has "important" testimony to offer about one set of charges; and (3) a "'strong need' not to testify on the other counts." *Hersh*, 297 F.3d at 1243 n.15 (quoting *United States v. Gardiner*, 955 F.2d 1492, 1497 (11th Cir. 1992)).

To determine whether Smirnoff satisfies these three requirements, the court must first address a threshold evidentiary question: whether under Federal Rule of Evidence 404(b), the video--and other evidence--to prove Count One (the March 2016 incident) would be admissible in a separate trial to prove Count Two (the July 2015

incident), and vice versa?  It is in part because the answer to this question is yes--the evidence is *mutually admissible*--that Smirnoff cannot meet the three requirements, and that his motion will accordingly be denied.

### 1. Mutual Admissibility Under Rule 404(b)

Federal Rule of Evidence 404(b)(1) prohibits as follows:

> "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

However, Rule 404(b)(2) then allows as follows:

> "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Thus, evidence of a defendant's other bad conduct may be admissible for a purpose other than to prove the defendant's character.

The Eleventh Circuit Court of Appeals "uses a three-part test for determining whether other bad acts

are admissible under Rule 404(b): 'First, the evidence must be relevant to an issue other than the defendant's character; Second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; Third, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.'" *United States v. Horner*, 853 F.3d 1201, 1213 (11th Cir. 2017) (quoting *United States v. Matthews*, 431 F.3d 1296, 1310-11 (11th Cir. 2005)). For the reasons outlined below, this court finds that, at this stage in the proceedings, all three requirements are met with respect to the admissibility of evidence of Count One to prove Count Two, and vice versa.

*FIRST PART OF THREE-PART TEST--RELEVANCE:* When, as here, the evidence of the extrinsic offense is offered to prove the defendant's intent, the "test for relevance is whether the extrinsic acts and the charged offense require the same type of intent and are close in time."

*United States v. Wyatt*, 762 F.2d 908, 910 (11th Cir. 1985).  Here, Count One (the alleged March 2016 slamming incident) and Count Two (the alleged July 2015 taser incident) both require the same type of statutory intent, because both charge him with violating 18 U.S.C. § 242, which requires the defendant to "willfully" deprive a person of his rights.  Furthermore, the court finds that the counts are sufficiently "close in time," since they occurred only nine months apart.  While this is longer than the two months separating the incidents in *Wyatt*, the Eleventh Circuit has "refrained from adopting a bright-line rule with respect to temporal proximity," and upheld the admission of an extrinsic offense that occurred even eight years prior to the charged offense. *Matthews*, 431 F.3d at 1311-12.  Here, after having looked at the broad picture, the court is convinced that the two acts at issue are sufficiently close in time.

*SECOND PART--SUFFICIENCY OF EVIDENCE:* The government need not prove beyond a reasonable doubt or even by clear and convincing evidence that Smirnoff committed the

extrinsic offenses. *See United States v. Mitchell*, 666 F.2d 1385, 1389 n.6 (11th Cir. 1982). All the court must decide is that a jury could reasonably find that he committed the offenses. *See id.* Based on both parties' representations of the evidence of Counts One and Two, the court finds at this stage of the proceedings that a jury could reasonably find that Smirnoff committed each of the alleged offenses.

*THIRD PART--PROBATIVE VALUE VERSUS UNDUE PREJUDICE:* Federal Rule of Evidence 403 is the source of the third requirement. It provides, in part, that, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice." Fed. R. Evid. 403. Importantly, the rule says the court "may," not must, exclude the evidence. The court, therefore, has some discretion as to whether to allow or disallow the evidence, though that discretion must obviously be exercised reasonably.

In the Rule 404(b) context, when balancing probative value against the risk of unfair prejudice, the court

should consider the circumstances of the extrinsic offense. *See United States v. Astling*, 733 F.2d 1446, 1457 (11th Cir. 1984). "Factors to be considered include the strength of the government's case on the issue of intent, the overall similarity of the extrinsic and charged offenses, the amount of time separating the extrinsic and charged offenses, and whether it appeared at the commencement of trial that the defendant would contest the issue of intent." *Id.* (quoting *Mitchell*, 666 F.2d at 1390).

Here, there is a substantial risk of the evidence causing unfair prejudice to Smirnoff, because the jury could treat the extrinsic offenses as impermissible character evidence. That is, a jury may improperly infer that the evidence of one incident of alleged excessive force makes it more likely that he is guilty of the other charged incident, because, in its view based on his character, he has a propensity to use excessive force when arresting people.

True, the court could mitigate this risk by instructing the jury not to draw a prohibited character or propensity inference from the evidence. *See United States v. Walser*, 3 F.3d 380, 387 (11th Cir. 1993) ("[I]f the possible prejudice may be cured by a cautionary instruction severance is not required."); *United States v. Roy*, 855 F.3d 1133, 1186 (11th Cir. 2017) (en banc) ("[T]he Supreme Court has repeatedly held that we must presume that juries follow their instructions."). Yet, the court must ask itself what exactly it would mean if it instructed the jury to consider the extrinsic offense as probative of only *intent*, but not of the defendant's character or propensities? Here, wouldn't Smirnoff's intent regarding the extrinsic offense be logically relevant to proving his intent in the charged offense *only if* the jury makes the impermissible inference that he has a propensity to form that intent? *Cf. United States v. Miller*, 673 F.3d 688, 699 (7th Cir. 2012) ("How, exactly, does Miller's prior drug dealing conviction in 2000 suggest that he intended to deal drugs in 2008?

When the question is framed this way, the answer becomes obvious, even though implicit: 'He intended to do it before, ladies and gentlemen, so he must have intended to do it again.' That is precisely the forbidden propensity inference.").

Consider the dissent in *United States v. Beechum*, the watershed case that established that the test for whether an extrinsic offense is relevant to proving intent in the charged offense for purposes of Rule 404(b) focuses on whether the two offenses "require[d] the same intent." 582 F.2d 898, 913 (5th Cir. 1978) (en banc). The majority's reasoning for adopting this test was that "because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense." *Id.* at 911. As the dissenters in *Beechum* pointed out, however, this reasoning is logically flawed in light of Rule 404(b)'s prohibition on character evidence. In their words, it is "beyond reason" to "reason that because a defendant displayed an improper intent in the past, he is more

likely to have had an evil intent in the act for which he is tried" somehow "differs from reasoning that the defendant has a 'propensity' to act with evil intent." *Id.* at 920 (Goldberg, J., dissenting); *see generally*, David A. Sonenshein, *The Misuse of Rule 404(b) on the Issue of Intent in the Federal Courts*, 45 Creighton L. Rev. 215, 221-233 (2011) (noting that the current Eleventh Circuit rejected the *Beechum* dissent and has adopted "rather extreme views of Rule 404(b) and intent").

While these are serious concerns, it must be remembered that Rule 403, upon which Rule 404(b)'s probative-versus-prejudice inquiry is based, says the court "may" exclude, and by implication, "may" allow the extrinsic evidence. A balancing test is required. To say that, every time the two offenses at issue require the same statutorily required intent, the court must allow the introduction of the extrinsic one would nullify the balancing test. The court must engage in a deeper 'factual' analysis, specific to the instances at issue,

than just whether the two offenses involve the same intent. Or to put it another way, the court must, as best it can, make sure that it is not just allowing the introduction of character or propensity evidence and that there is really some basis that the evidence would be enlightening as to intent based on the specific facts presented.

It is true that the more similar the offenses, the more probative the extrinsic offense is as to intent. *See Astling*, 733 F.2d at 1457 (finding that the probative value of the extrinsic offense was high in part because the offenses "were almost exactly identical"). But that raises the issue of just how factually similar the two are, and whether they are similar in material ways. Here, Count One and Count Two both involved the alleged use of excessive force. But is that general level of factual similarity enough to make the 2015 and 2016 alleged offenses each highly probative of the other? After all, Count One involved an alleged slamming incident, whereas Count Two allegedly involved tasing.

What tips the scales here is that the two instances allegedly involved more than just arguably similar (or even dissimilar) conduct or acts.  Here, there is allegedly evidence from which a factfinder could infer that Smirnoff expressly made known *in his own words* what his intent was at the time of both incidents.  Namely, at to Count 2, the government contends that video footage shows that immediately after tasing the arrestee, Smirnoff stated, "There's your f--king rights." Government Response (doc. no. 24) at 5-6.  As a result, Smirnoff's alleged statement of his view about an arrestee's rights would likely be admissible regardless of whether the statement occurred during an incident of misconduct or not.  That is, his statement that he viewed the arrestee's rights as "f--king rights" would likely be probative in and of itself, regardless of whether it occurred during an extrinsic bad *act*.

Moreover, an additional factor in favor of admissibility is that it appears that Smirnoff's intent

will be "a critical issue at trial."  *Id.*[4]  And finally,
if Smirnoff wishes, the court can provide cautionary
instructions to the jury, including not to infer that one
incident of alleged excessive force makes him more likely
to have engaged in excessive force on the other occasion.

In sum, the government satisfies the three-part test
for determining whether the extrinsic offenses are
admissible under Rule 404(b).


### 2. Ramifications of Rule 404(b) Admissibility

The Eleventh Circuit has held that the "[u]nfair
prejudice" needed to justify a severance "does not result
when two offenses are joined if evidence admissible to
prove each offense is also admissible to prove the other
offense."  *United States v. Gabay*, 923 F.2d 1536, 1540

---

4. The government's briefing on the 404(b) issue
asserts that because Smirnoff's conduct is captured on
video, the trial is unlikely to involve factual disputes
about his actions.  *See* Government Response (doc. no. 24)
at 7.  Instead, the government represents that its
evidence will focus on demonstrating that Smirnoff had
the required intent to commit the charged offenses.  *See*
*id.*  Smirnoff did not dispute the government's
contentions on this point.

(11th Cir. 1991). Here, there are two alternative ways to read and apply this rule in light of the court's finding that, under Rule 404(b), evidence of Count One is admissible to prove Count Two, and vice versa, that is, that there is a *mutual admissibility of evidence*.

The first alternative is that, regardless of whether Smirnoff meets the three requirements for defendants who seek a severance based on the desire to testify about one count but not another, his severance motion automatically fails, because the mutual admissibility of evidence means that unfair prejudice "does not result" from a single trial. *Id.* This reading of the law is supported by the categorical language of the *Gabay* rule: X (unfair prejudice) does not result if Y (mutual admissibility) occurs. Furthermore, in *Gabay*, the rule served as the sole, independent ground for denying the severance motion--no further analysis was necessary. *See id.; see also United States v. Carr*, 373 F.3d 1350, 1352-53 (D.C. Cir. 2004) (Ginsburg, C.J.) (denying severance because a "finding of prejudice is logically precluded if, had the

counts been tried separately, the evidence concerning each count would have been admissible on each other count"); *United States v. Hill*, 2011 WL 2434083, at *1 (N.D. Fla. June 16, 2011) (Rodgers, J.) (citing *Gabay* in holding that the "unfair prejudice argument fails because ... evidence of [the defendant's] prior activity would be admissible for Counts One and Two regardless of whether Count Three was severed"). Finally, this reading also seems correct if the three requirements that apply when the defendant wishes to testify about one count but not another is viewed as a proxy for determining the ultimate question of whether there is "unfair prejudice" sufficient to justify a severance. The *Gabay* rule would seem to resolve this ultimate question irrespective of how the proxy test resulted.

The second alternative is that here the mutual admissibility of evidence is a factor to consider when analyzing whether the three requirements are met that may undermine--but does not automatically preclude--the existence of sufficient prejudice. As to the first

requirement, the mutual admissibility of evidence undermines a defendant's contention that counts are "distinct in ... evidence." *Hersh*, 297 F.3d at 1243 n.15. And as elaborated later in this opinion, the mutual admissibility of evidence can also undermine the defendant's arguments as to the second and third requirements that he has "important" testimony about one count and a "strong need" to refrain from testifying about another, because the mutual admissibility can place him "in the same dilemma with separate trials as he would [be in] with a joint trial." *United States v. Seigler*, 2018 WL 3811550, at *2 (W.D. Va. Aug. 10, 2018) (Jones, J.). Further supporting the second alternative is the fact that none of the cases in which the *Gabay* rule served as the sole, independent ground for denying a severance involved defendants--such as Smirnoff--who claimed prejudice based on a wish to testify about one charge but not another, rather than, for instance, based on the claim that evidence of one charge would make a jury think he is more likely to have committed the other.

Ultimately, this court need not resolve which alternative reading of the *Gabay* rule applies. Because Smirnoff cannot meet the three requirements--in part due to the mutual admissibility of evidence--his motion must be denied, regardless whether the mutual admissibility of evidence *automatically* precludes a severance.

### 3. First Requirement: Distinct Time, Place, and Evidence

Smirnoff cannot meet his burden of showing that the charges are "distinct in time, place, *and evidence*," given that there is significant overlapping evidence to prove each count. *Hersh*, 297 F.3d at 1243 n.15 (emphasis added). This overlapping evidence means that a single trial would further the "interests of judicial economy," which this court must weigh against prejudice when resolving a severance motion. *Benz*, 740 F.2d at 911.

The first type of overlapping evidence that the government anticipates introducing on different counts is that of the Tallassee Police Department's use of force polices and training, as well as testimony from law

enforcement officers about the Tallassee Police Department's practices for using and documenting force. *See* Government Response (doc. no. 24) at 7. According to the government, this evidence will tend to prove that Smirnoff "willfully" violated the arrestees' rights. *Id.* Perhaps more importantly, as explained above, under Rule 404(b), evidence--such as video footage--admissible to prove Count Two will also be admissible to prove Count One, and vice versa.

Even though Smirnoff's failure to satisfy the first requirement is fatal to his motion, the court will also explain why he fails to satisfy the second and third requirements.

### 4. Second and Third Requirements: "Important" Testimony About One Count, "Strong Need" Not to Testify About Another

The court's Rule 404(b) finding as to the mutual admissibility of evidence means that separate trials would not shield Smirnoff from his asserted quandary of having "important" testimony about Count Two (the alleged

July 2015 taser incident), and a "strong need" not to testify about Count One (the alleged March 2016 slamming incident).  Imagine being in Smirnoff's shoes at the Count One trial once the government introduces the evidence of the Count Two tasing incident.  At that point, he would presumably want to give the same "important" testimony to explain his alleged Count Two conduct as he claims to want to give at the trial for Count Two.  And he would still presumably want to remain silent about Count One.  Accordingly, "he would be placed in the same dilemma with separate trials as he would with a joint trial."  *Siegler*, 2018 WL 3811550, at *2 (denying severance partly due to this reason).  Put differently, because the evidence of Counts One and Two are "mutually admissible ... [the] allegations of prejudice are undermined."  *Id.* (quoting *United States v. Tyson*, 462 F. App'x 402, 407 (4th Cir. 2012) (unpublished)).

The mutual admissibility of evidence here distinguishes this case from *United States v. Sampson*, an opinion cited by Smirnoff in which the Second Circuit

Court of Appeals held that a severance was warranted based on the defendant's wish to testify about one count but not another. 385 F.3d 183, 190-94 (2004). There, a major reason for the court's severance holding was its finding that evidence relating to the counts the defendant did not want to testify about would *not* have been admissible at a separate trial on the counts he did want to testify about. *See id.* at 193; *see also United States v. Berkman*, 2010 WL 1525469, at *3 (S.D. Fla. Apr. 4, 2010) (Hopkins, M.J.), *report and recommendation adopted*, 2010 WL 1375479 (S.D. Fla. Apr. 6, 2010) (recommending denial of a severance for defendant who wished to testify about one count but not another in part because the "instant case is unlike ... *Sampson* ... , where evidence relating to the severed counts almost certainly would not have been admitted at a separate trial").

In sum, Smirnoff cannot satisfy the three requirements defendants must meet when seeking a severance based on their wish to testify about one count

but not another. The court's Rule 404(b) finding that evidence to prove Count Two (the alleged July 2015 taser incident) would be admissible to prove Count One (the alleged March 2016 slamming incident) seriously undermined his ability to meet these requirements.

* * *

Accordingly, it is ORDERED that defendant Michael Brandon Smirnoff's motion to sever (doc. no. 20) is denied.

DONE, this the 17th day of April, 2019.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE